GERALD J. MCMAHON

ATTORNEY AT LAW

www.geraldjmcmahon.com
gm@geraldjmcmahon.com

11 BURNHAM COURT
SCOTCH PLAINS, NJ 07076
(908) 347-4670

375 GREENWICH STREET
NEW YORK, NY 10013
(212) 965-4259

September 16, 2022

By ECF

The Honorable Eric N. Vitaliano
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Carmelo Polito
          22 Cr. 356 (ENV)

Dear Judge Vitaliano:

     I write on behalf of defendant Carmelo Polito ("defendant" or "Polito") to seek a modification of his bail conditions to allow him to retain his full-time employment as a cement mason for the Sorbara Construction Corp. ("Sorbara").

     Mr. Polito was arrested at his home in the early morning hours of August 16, 2022 following his indictment for racketeering and related charges centering around several gambling businesses. Defendant was actually at work when the agents arrived at his house but, in response to a telephone call, he returned home to be taken into custody. At his arraignment later that day before Magistrate Judge James R. Cho, Polito was released on a $1.1 million bond, secured by two financially responsible co-signers (wife and daughter), location monitoring, travel restrictions, a curfew as determined by Pretrial Services ("PTS"), and obligations to have no contact with: 1) co-defendants except in the presence of an attorney; 2) victims, witnesses or organized crime members or associates; and 3) any gambling establishments. (A copy of the relevant portion of the minutes of the bail hearing is appended hereto as Exhibit A). Defendant was released that evening following his arraignment, and has remained fully compliant with all bail conditions to date.

     As stated above, Mr. Polito is employed full time as a union cement mason for Sorbara Construction. Basically, defendant works with concrete being poured into rebar. As the Court can imagine, there are strict safety protocols that have to be followed when working at such a job site. Sorbara requires that "Employees must wear a good sturdy work boot, industrial work

GERALD J. MCMAHON

The Honorable Eric N. Vitaliano
United States District Judge
September 16, 2022
Page Two

shoes on the job site." Sorbara Health and Safety Program Manual, March 26, 2021, at 22.
Defendant has been unable to wear "industrial work shoes" because of the electronic bracelet
attached to his ankle. On September 6, 2022, the Sorbara Construction Concrete Safety
Manager sent the following email to defendant's supervisor:

> It has been brought to my attention, by the site safety manager. That [sic]
> Carmelo has been wearing sneakers on site. It is our policy that proper
> footwear is maintained by all trades. Please see Mr. Polito has acceptable work
> boot to remain on site.

Email from Robert Miller to Anthony Muzyka, September 6, 2022 (copy appended hereto as
Exhibit B).

This job pays Mr. Polito approximately $2,100 per week and includes full health
insurance benefits. Defendant is married and has three children and significant financial
obligations. Polito should not lose a very good job because of a bail condition that is not really
required in a case that was correctly summarized by Magistrate Judge Cho in one sentence: "It
is an illegal gambling case." Exhibit A, at 47.

Accordingly, the Court should modify defendant's bail conditions to eliminate the
requirement of electronic monitoring/ankle bracelet.

Very truly yours,

Gerald J. McMahon

GJM:dlg
Enclosures
cc: All Counsel
      (by ECF)

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,      :  22-cr-00356(ENV)-1,2,3,5
                               :
                               :
     - versus -                :  U.S. Courthouse
                               :  Brooklyn, New York
JOSEPH MACARIO, ET AL.,        :
                               :  August 16, 2022
               Defendants      :  3:35 p.m.
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:          **Breon S. Peace, Esq.**
                                United States Attorney

                          BY:   **Drew G. Rolle, Esq.**
                                **Tanya Hajjar, Esq.**
                                **Abigail Margulies, Esq.**
                                **Anna L. Karamigios, Esq.**
                                Assistant U.S. Attorneys
                                271 Cadman Plaza East
                                Brooklyn, New York 11201


**For Def. Macario and**         **Gerald J. McMahon, Esq.**
  **Def. Polito**:               375 Greenwich Street
                                New York, NY 10013

**For Def. Rubino**:             **Walter S. Mack, Esq.**
                                Doar Rieck Kaley & Mack
                                217 Broadway, Suite 707
                                New York, NY 10007


**For Def. Feuer**:              **Donald D. DuBoulay, Esq.**
                                305 Broadway, Suite 602
                                New York, NY 10007


**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

2

1  THE CLERK:  This is Criminal Cause for
2  Arraignment on an indictment, *USA v. Joseph Macario,*
3  *Carmelo Polito, Salvatore Rubino, and Mark Feuer.*  The
4  case number is 22-cr-356.
5  May I have the parties state their name for the
6  record?  Appearing for the government, please?
7  MR. ROLLE:  Yes.  Good afternoon, your Honor.
8  Drew Rolle, Tanya Hajjar, Abigail Margulies, and Anna
9  Karamigios for the United States.
10  THE CLERK:  Thank you.
11  THE COURT:  Good afternoon.
12  THE CLERK:  Counsel appearing for Joseph
13  Macario?
14  MR. McMAHON:  Good afternoon, your Honor.
15  Gerald McMahon for Joseph Macario who's seated to my
16  right.
17  THE CLERK:  And Carmelo Polito also?
18  MR. McMAHON:  Yes, your Honor.  Gerald McMahon
19  also for Mr. Carmelo Polito who's seated to my left.
20  THE COURT:  All right.  Good afternoon.
21  THE CLERK:  Thank you.  Counsel for Mr.
22  Salvatore Rubino?
23  MR. MACK:  Good afternoon, your Honor.  Walter
24  Mack appearing for Mr. Rubino who is sitting to my left.
25  THE CLERK:  Thank you.  And lastly counsel for

Proceedings

1  witnesses or intimidate or seek to influence the

2  testimony of any witnesses against you.  Do you

3  understand that?

4          DEFENDANT RUBINO:  Yes.

5          THE COURT:  Okay.  So keep your attorney aware

6  of where you can be reached, appear in court as directed,

7  do not commit any crimes while out on bail, and do not

8  seek to influence the testimony of any witnesses against

9  you.  Okay?  Can you comply with all those terms of your

10  release?

11          DEFENDANT RUBINO:  Yes.

12          THE COURT:  Okay.  All right.  I'll approve the

13  bond as discussed.  Okay?  All right.  That's Mr. Rubino.

14          All right.  Mr. Rolle, do you want to talk

15  about Mr. Polito?

16          MR. ROLLE:  Yes, your Honor.  So we didn't get

17  far, if at all, with counsel as to our proposed bond.  So

18  your Honor, the government believes that both as to Mr.

19  Polito and Mr. Macario that the bond should be between 2

20  and $3 million secured by property to be signed by

21  multiple suretors, between three and four suretors.  This

22  is commensurate with both their status, their long-

23  standing status in the Genovese crime family.  They're

24  similarly situated to Mr. Anthony Pipitone who was a made

25  member of the Bonanno crime family and we had a $2

Proceedings

1   million bond secured imposed earlier this afternoon.

2           But as to Mr. Polito, this is crucial because

3   he's basically spent his entire adult life associated

4   with the Genovese crime family through a series of

5   escalating crimes, having been convicted of robbery,

6   convicted of murder in this courthouse which was reversed

7   finding not that he didn't do it but that they couldn't

8   find out why he did it.  None of that stopped him as he

9   then continued rising to be an acting captain in the

10  Genovese crime family.  It was from that position that he

11  helped oversee and run the long-standing and vast

12  gambling operation and money laundry operation for which

13  he enriched himself, his family and friends, and that's

14  why we're here today.  And that's significant conduct,

15  Judge.  It shows that this defendant has not turned away

16  from the life that he's chosen to live, that he thinks is

17  important to be that way.  These crimes ran for quite

18  some time.  Again, I think that's important.  Instead of

19  finding a viable job and maintaining it, he instead used

20  his threats of violence to extort victims, he's charged

21  with a violent crime in this case, to make money instead

22  of working to earn an honest living.

23          So there are real concerns about his danger to

24  the community, to his recidivism, and given his age and

25  the penalties he faces, the risk of flight and

Proceedings

1  nonappearance.

2          So as to Mr. Polito, I think there was a

3  proposal of a personal recognizance bond from counsel.

4  That's totally inadequate.  On his criminal history alone

5  and on the charges here and given his position in the

6  Genovese crime family, which as we recounted in our

7  memorandum as to both of these defendants, given their

8  position in the Genovese crime family, what they are

9  capable of doing was acting through others and that

10  presents serious risks on pretrial release.  That's not

11  only hypothetical, but it's how they operated in this

12  case.  Mr. Macario and Mr. Polito frequent the gambling

13  parlors but they didn't have to go bag up the money every

14  time.  They relied on their underlings to do that, to

15  meet them at clandestine meetings to hand it off because

16  they knew they that were under surveillance and they

17  acted accordingly.  That's the conduct that's in this

18  case.  This is not a guess.  And so that's why we need a

19  substantial secured bond to ensure that they comply to

20  ensure the safety of the community and to ensure their

21  continued appearance, Judge.

22          THE COURT:  All right.  Well let's take them

23  one at a time.  So for Mr. Polito, what bond amount are

24  you seeking?

25          MR. ROLLE:  We are seeking the same amount as

41

Proceedings

1   to each, between 2 and $3 million.  We would like to see

2   more security put in for Mr. Polito.  Mr. Macario's can

3   be partially secured.  So for Mr. Polito between 2 and $3

4   million, your Honor.

5          THE COURT:  Okay.  All right.  Mr. McMahon, do

6   you want to be heard?  Let's take them one at a time.

7   Regarding Mr. Polito?

8          MR. McMAHON:  Yes, Judge.  Your Honor, it's

9   quite a description by the prosecutor as to my client's

10  criminal history.  Of course it is completely fanciful.

11  My client has one conviction.  He's 63 years old.  He has

12  one conviction in his entire life and that conviction was

13  in 1995 which by my calculation is decades ago.  He was

14  in fact convicted in this courthouse in a murder in aid

15  of racketeering case before Judge Glasser.  I know, I

16  tried the case.  And it was our defense at the trial that

17  whatever happened, it was not a murder in aid of

18  racketeering.  It had nothing to do with the mob.  And

19  while we were not able to get the jury to agree to that,

20  the Second Circuit absolutely agreed with that, said it

21  was not a murder in aid of racketeering, and they didn't

22  just vacate the conviction, they gave directions which

23  ended up in the indictment being dismissed.

24          Now the government, unhappy with that result,

25  sent its agents down the street to Brooklyn District

42

Proceedings

1  Attorney's Office and had Mr. Polito indicted for murder.

2  Murder not in aid of racketeering, but just murder.  And

3  all of the federal agents and informants came and

4  testified at the murder trial down the street.  And after

5  hearing them and hearing the shortfalls and inadequacies

6  of their testimony, the jury saw fit to acquit him

7  completely.  Walked out the door.

8          So as he sits here today at the age of 63, his

9  entire criminal history is one conviction in 1995.  Now

10  they say he's involved in all these gambling operations

11  and everything.  There is no shortage of resources in the

12  United States government.  There's FBI agents all over

13  the room.  There's four AUSAs sitting in the room.  If my

14  client, Mr. Polito, has been involved in gambling for lo

15  these many years, why are we here today 20 years after

16  his one and only conviction?

17          So your Honor, talk is cheap.  Talk is very

18  cheap.  The record is clear, he has one conviction.  It's

19  decades old.  What the record does show and Pretrial

20  Services does show that he's married.  His wife -- he has

21  four children.  Excuse me, three children.  His wife is

22  in court, his daughter is in court.  Mr. Polito has

23  worked gainfully employed for decades.  His wife owned a

24  restaurant in Long Island City, Bella Via.  Very

25  successful restaurant.  She owned it for many years.  Mr.

43

Proceedings

1   Polito worked there with his wife for many years.  Mr.

2   Polito is now working as a cement mason.  For a guy who

3   apparently doesn't do anything but sit in gambling dens,

4   when the FBI came to arrest him at 6 o'clock this morning

5   at his house in Whitestone, Queens, do you know where he

6   was?  He was at work as a mason.  So what did they do?

7   They had the wife call him.  Carmine, there are agents

8   here.  And he came home to be arrested.  So in terms of

9   their story that they've just given you, it's just

10  complete hogwash.  He was at work and came home and here

11  we are sitting here today.

12          So your Honor, the house that they live in is

13  owned wholly by his wife and its value is approximately

14  $850,000.  I think the Zillow number was 800 and some

15  change.  But it's between 800 and $900,000.  There's no

16  mortgage on the house.  There's a line of credit of

17  $72,000.  And as I say, it's solely owned by his wife

18  who's present in Court.

19          So it seems to me that given the lack of a

20  conviction except since 1995 and the fact that this case

21  is basically a gambling case, we are suggesting to your

22  Honor that the appropriate bond would be a bond not in

23  the amount of 2 million or $3 million, but most a $1

24  million bond.  And if it were cosigned by his wife, who

25  as I say is the owner of a house that's 800 or $900,000

44

Proceedings

1  worth -- and as I say, his daughter, who is a nurse

2  practitioner, she is present in court.  She's of course

3  willing to sign a bond on his behalf.  But Pretrial

4  Services said there's no risk of flight.

5              Oh by the way, there was an issue about his

6  passport and we have in court his un-expired passport,

7  his current passport.  So we're prepared to surrender

8  that to Pretrial Services so there won't be any issue

9  about travel or stuff like that.

10             So I think, your Honor, the employment history

11  that he has, the fact that he came home to be taken into

12  custody this morning by the FBI agents, the fact that a

13  very large amount of money would be securing the

14  property, would be securing the bond, the fact that there

15  is no criminal conviction since 1995, and the fact that

16  this is basically a gambling case -- I know they talk

17  about the Genovese family and we got John Gotti here, we

18  got everybody here, the case is a gambling case.  A

19  gambling case.  Okay.  So the appropriate bond for a

20  gambling case for a guy who has one conviction that's

21  like 30 years old max $1 million PRB secured by property

22  owned by his wife which has an equity of about $850,000,

23  and all of the other conditions, travel restricted to New

24  York City and Long Island, and strict Pretrial

25  supervision, no association with La Cosa Nostra, no

Transcriptions Plus II, Inc.

45

Proceedings

1   association with co-defendants except in the presence of

2   attorneys.  I believe, Judge, that those -- even Pretrial

3   recognizes that he's not a risk of flight and I think

4   that his track record indicates that he will be fully

5   compliant with all the bail conditions.

6          And the most telling thing is that, and I keep

7   mentioning it because it's not every day that they come

8   and get your guy at 6 o'clock in the morning, he's not

9   there, he's at work.  It's not that he's at the track or

10  something.  But the fact that he came home, put the cuffs

11  on, and here we are.  I think all of that suggests, your

12  Honor, that a $1 million PRB secured by a home owned by

13  his wife and can be cosigned by his wife and cosigned by

14  his daughter who's also present in court at the present

15  time.  And I think that should be sufficient, Judge.

16         THE COURT:  All right.  And I can ask for

17  myself but do you know approximately how much the

18  daughter earns per year?

19         MS. POLITO:  115,000.

20         THE COURT:  Okay.

21         MR. McMAHON:  She's a nurse practitioner, your

22  Honor.

23         MR. ROLLE:  Judge, may I be heard?

24         THE COURT:  Go ahead.

25         MR. ROLLE:  Your Honor, I'd like to respond.

46

Proceedings

1  Counsel puts a lot of emphasis on Mr. Polito's work

2  experience and counted where he's worked and also that he

3  has one conviction.  I think the tack here is to decide

4  if a man who has spent his life in the Genovese crime

5  family can be trusted to comply with his conditions.  And

6  one would think having been convicted, reversed, and

7  acquitted, one would turn from the life 20 years ago.

8  But we're here today because he made a knowing decision

9  not to as outlined in the indictment in our detention

10 memo.

11        But as to his employment history, I think it's

12 notable that part of this case and part of the

13 substantial hours of recordings and video that will be

14 produced in discovery is that this defendant used his

15 employment to further the enterprise.  He spent much of

16 his time at the Bella Via meeting with the captains, the

17 senior leadership of not only the Genovese crime family,

18 the Gambino crime family, the Bonanno crime family.  And

19 you'll hear this on tape.  So while working he never

20 stopped working for the family and that's the core issue

21 because when he goes and does something that might seem

22 to his family to be working legitimately at the Bella

23 Via, what's happening out of sight among the people he

24 trusts, that he's talking about organized crime and

25 furthering these racketeering activities.  So that's the

47

Proceedings

1  central concern.  And he chose to do that notwithstanding

2  the fact that he had been acquitted in state court of

3  murder after being convicted of murder in federal Court

4  which is a telling decision making approach for this

5  defendant.  I think that's very important in what

6  supports a significant bond here.

7           THE COURT:  Okay.

8           MR. McMAHON:  Just briefly one thing, your

9  Honor.

10          THE COURT:  Go ahead, Mr. McMahon.

11          MR. McMAHON:  The reversal and the acquittal in

12 state court was in 2005.  If he's been committing crimes

13 from 2005 every day to today, where have they been for 20

14 years?  That's all.

15          THE COURT:  Understood.  I'd be more inclined

16 to agree with the government if there was some sort of

17 murder charge in this case, but there is not.  It is an

18 illegal gambling case.  So I'm prepared to approve a --

19          MR. ROLLE:  Judge, I'm sorry, just for clarity

20 of the record, this defendant is charged in fact with

21 attempted extortion where he threatened to put a man

22 under the bridge and burn his face.

23          THE COURT:  Understood.

24          MR. ROLLE:  So I think that that piece is

25 important and differentiates him certainly from the other

48

Proceedings

1  defendants charged in the racketeering count.

2          THE COURT:  I understand.  All right.  Well I'm

3  going to set the bond amount at 1.1 million.  Okay?  It's

4  higher than the proposed 1 million.  I understand we have

5  two suretors here.  So I'm proposing a $1.1 million bond

6  subject to me finding that these suretors are appropriate

7  and they're going to post a property as well.  Okay?

8          MR. ROLLE:  Mm hm.

9          THE COURT:  So why don't I hear from the

10 suretors now?  So --

11          THE CLERK:  You want them up here now, Judge?

12          THE COURT:  Yes, why don't they come up?

13          THE CLERK:  Victoria Polito and Jacqueline

14 Polito, up here, please.  And the property at 150-49.

15 Okay.  Up here, please.  Thank you.  Okay, I'm just going

16 to swear you both.  Please raise your right hand.

17 V I C T O R I A   P O L I T O,

18 J A C Q U E L I N E   P O L I T O,

19     called as witnesses, having been first duly sworn,

20     were examined and testified as follows:

21          THE CLERK:  Can you state your name for the

22 record?

23          MRS. POLITO:  Victoria Polito.

24          THE CLERK:  Thank you, Victoria.

25          MS. POLITO:  Jacqueline Polito.

49

Proceedings

1          THE CLERK:  Thank you.  Okay, Judge.

2          THE COURT:  All right.  Good afternoon.  I'm

3  sure neither one of you wants to be here today, but let

4  me explain to you what's going on.  Okay?  So there's

5  been some discussion about the proposed bail package by

6  Mr. Polito.  Okay?  I'm prepared to approve a bail

7  package that provides for a $1.1 million bond.  Under our

8  system though, no one has to put up any money at all

9  today.  Okay?  It's only in the event that Mr. Polito,

10  your husband, your father, violates any terms of his

11  release that the government may come after you to recover

12  the full $1.1 million bond.  Okay?

13          So what I need to do is ask you some questions

14  to assure myself that you're appropriate suretors.  Okay?

15  So why don't I start with you first, Victoria Polito.

16  You are Mr. Polito's wife.  Is that correct?

17          MRS. POLITO:  (No audible response).

18          THE COURT:  Okay.  Where do you live?

19          MRS. POLITO:  150-49 9th Avenue, Whitestone.

20          THE COURT:  Okay.  And who else lives there

21  with you?

22          MRS. POLITO:  My husband and I.

23          THE COURT:  All right.  And how long have you

24  lived there?

25          MRS. POLITO:  Lived there for 35 years.

50

Proceedings

1       THE COURT:  Okay.  Now is it true that there's

2  no mortgage on that property?

3       MRS. POLITO:  No mortgage on it.  Just I have a

4  line of credit on the home for $72,000.

5       THE COURT:  Okay.  And how much would you value

6  the property today approximately?

7       MRS. POLITO:  Depends who wants it.  I mean I

8  would say the normal range would probably be about

9  900,000 but considering where I live, the houses are

10  going for a lot more than that.

11       THE COURT:  Understood.  All right.  Are you

12  currently working?

13       MRS. POLITO:  No, I'm not.

14       THE COURT:  Okay.  Do you have any income

15  coming in at this point in time?

16       MRS. POLITO:  I have my husband works and I

17  have -- I just filed for social security.

18       THE COURT:  Okay.  And how much --

19       MRS. POLITO:  Because of the pandemic,

20  everything just got --

21       THE COURT:  Understood.  And how much do you

22  receive in social security approximately?

23       MRS. POLITO:  Approximately 1,300 a month.

24       THE COURT:  Okay.  Now knowing all of the

25  conditions of his release as we've discussed here in

Transcriptions Plus II, Inc.

51

Proceedings

1    court and the posting of your property, do you still want

2    to sign this bond?

3             MRS. POLITO:  Yes, I do.

4             THE COURT:  Okay.  All right.  I'll find you to

5    be an appropriate suretor.  Okay?  All right.  Jacqueline

6    Polito?

7             MS. POLITO:  Yes.

8             THE COURT:  Okay.  What year were you born?

9             MS. POLITO:  1989.

10            THE COURT:  Okay.  Approximately how old are

11   you?

12            MS. POLITO:  33.

13            THE COURT:  All right.  And I assume you work

14   as a nurse practitioner, is that right?

15            MS. POLITO:  Correct.

16            THE COURT:  Where do you work?

17            MS. POLITO:  I work with Advantage Care

18   Physicians, full-time employee for four years now.

19            THE COURT:  Okay.  And approximately how much

20   do you earn per year?

21            MS. POLITO:  Approximately 115,000 a year.

22            THE COURT:  Okay.  All right.  As I indicated

23   to your mom as well, you don't have to put up any money

24   today.  Okay?  It's only in the event your father

25   violates any terms of his release the government may come

Transcriptions Plus II, Inc.

Proceedings

1  after you to recover this bond.  Okay?  Which is $1.1

2  million.  Do you understand that?

3          MS. POLITO:  Yes, your Honor.

4          THE COURT:  All right.  Now knowing all that,

5  do you still want to sign this bond?

6          MS. POLITO:  Yes, your Honor.

7          THE COURT:  Okay.  All right.  I will find you

8  to be an appropriate suretor as well.  Both of you can

9  sit down.

10          MRS. POLITO:  Thank you, your Honor.

11          THE COURT:  Thank you.  All right.  Turning

12  back to you, Mr. Polito, your family is willing to post

13  the bond for you, all right, and they're posting their

14  property as well to secure your release.  All right?  So

15  it tells you a lot about your wife and your daughter.

16  Okay?  This is a significant bond amount, right?  It's

17  more than your attorney had asked for but a lot less than

18  the government had asked for.  Do you understand?

19          DEFENDANT POLITO:  Mm hm.

20          THE COURT:  All right.  But I'm prepared to

21  approve this bond as proposed.  Okay?  There are a number

22  of restrictions and let me remind you what those are.

23  You're not to have any contact with co-defendants in this

24  case without the presence of your counsel present.  Not

25  to have any contact with victims, witnesses, or members

53

Proceedings

1   and associates of La Cosa Nostra.  Do you understand

2   that?  Yes?

3            DEFENDANT POLITO:  Yes.

4            THE COURT:  Okay.  You are to avoid all

5   gambling establishments.  You must report to Pretrial

6   Services as directed.  You'll be subjected to a curfew.

7   Okay?  And your travel is restricted to New York City and

8   Long Island.  Okay?

9            Knowing all those conditions, can you agree to

10  comply with the terms of your release?

11           DEFENDANT POLITO:  Yes, I can.

12           THE COURT:  Okay.  All right.  And the same

13  warnings for you as well.  If you fail to come to court

14  as directed, a warrant will be issued for your arrest and

15  you'd be held without bail until your trial.  Do you

16  understand?

17           DEFENDANT POLITO:  Yes, I do.

18           THE COURT:  Okay.  If you fail to appear, you

19  may be brought up on charges of bail jumping.  Do you

20  understand?

21           DEFENDANT POLITO:  I do.

22           THE COURT:  Which is a separate felony offense.

23  All right?  Even if you're not convicted of the

24  underlying charge and you get convicted of bail jumping,

25  you could go to jail for that.  You understand?

54

Proceedings

1        DEFENDANT POLITO:  Yes, sir.

2        THE COURT:  Okay.  Now if you're convicted of

3  both the underlying charge and of bail jumping, you could

4  receive consecutive jail terms.  Do you understand?

5        DEFENDANT POLITO:  Yes.

6        THE COURT:  Okay.  Now if you commit any crimes

7  while out on bail, you'd be subjected to increased

8  punishment.  Do you understand?

9        DEFENDANT POLITO:  Yes, I do.

10        THE COURT:  All right.  You are not to threaten

11  or influence the testimony of any witnesses against you

12  and you could be punished for that too.  Okay?

13        DEFENDANT POLITO:  Yeah.

14        THE COURT:  All right.  So keep your attorney

15  aware of where you can be reached.  Do not commit any

16  crimes while out on bail.  Appear in court as directed.

17  And do not seek to influence the testimony of any

18  witnesses.  Okay?  Can you comply with all those terms of

19  your release?

20        DEFENDANT POLITO:  Yes, I can.

21        THE COURT:  Yes.  Okay.  I'll go ahead and

22  approve your bond.  Okay?

23        MR. ROLLE:  Your Honor, I wanted to confirm

24  that location monitoring was part of the conditions

25  imposed by your Honor.

55

Proceedings

1      THE COURT:  Yes.  I think that's understood but

2  if not, yes, you'll be subjected to location monitoring.

3  Okay?

4      MR. ROLLE:  Thank you, your Honor.

5      THE COURT:  All right.  Finally, Mr. Macario.

6  Go ahead, Mr. Rolle.

7      MR. ROLLE:  Thank you, your Honor.  I think

8  many of the same points I made as to Mr. Polito apply to

9  Mr. Macario.  While he has no criminal history as we note

10  in our submission and in the Pretrial report, his status

11  in the family was significant and he was one of the main

12  operators of this conspiracy alongside Mr. Polito.

13      And with it all the concerns I outlined as to

14  Mr. Polito remain here.  The fact that he has access to

15  others, can influence others and act through others even

16  while on release which all of which have been recognized

17  in the circuit as increasing the risk in cases like this

18  on release.

19      I think one thing that stood out in the

20  Pretrial memo was somewhat of a discrepancy as to what

21  the defendant, Mr. Macario, had described he's been doing

22  since 2012 which was that he owns JTM Ocean Corporation

23  to install cabinets and earns 700 a week.  Says he works

24  part time and is in the process of retiring.  Yet his

25  wife and son believe he's fully retired.  Whether that's

75

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **11th** day of **September**, 2022.


*Mary Greco*

Transcriptions Plus II, Inc.

# Exhibit B

Sent from my iPhone

Begin forwarded message:

> **From:** Anthony Muzyka <Amuzyka@sorbaraconstruction.com>
> **Date:** September 6, 2022 at 9:11:22 AM EDT
> **To:** CARMINE <carmelopolito59@gmail.com>
> **Subject: Fwd: Carmelo Polito**

Sent from my iPhone

Begin forwarded message:

> **From:** Robert Miller <rmiller@sorbaraconstruction.com>
> **Date:** September 6, 2022 at 7:48:35 AM EDT
> **To:** Anthony Muzyka <Amuzyka@sorbaraconstruction.com>
> **Subject: Carmelo Polito**

Good morning Anthony,

It has been brought to my attention, by the site safety manager. That Carmelo has been wearing sneakers on site. It is our policy that proper footwear is maintained by all trades. Please see Mr. Polito has acceptable work boot to remain on site.

Thank you,
Sorbara Construction Concrete Safety Manager
~Rob Miller
Sent from Mail for Windows

1